**K&L GATES LLP**
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

Erik J. Halverson (SBN 333492)
erik.halverson@klgates.com

*Attorney for Defendant*
*Warn Industries, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WESTIN AUTOMOTIVE PRODUCTS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>WARN INDUSTRIES, INC.,<br><br>Defendant. | Case No. 2:26-cv-05256-RGK-AYP<br><br>**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**<br><br>**JURY TRIAL DEMANDED**<br><br>Assigned to the Honorable R. Gary Klausner |

Defendant Warn Industries, Inc. ("Warn" or "Defendant"), by and through its undersigned counsel, hereby files this Answer, Affirmative Defenses, and Counterclaims to Plaintiff Westin Automotive Products, Inc.'s ("Westin" or "Plaintiff") Complaint filed on May 15, 2026 (Dkt. No. 1). Warn denies the allegations and characterizations in Plaintiff's Complaint unless expressly admitted in the following paragraphs.

**THE PARTIES**

1. Westin is a corporation existing under the laws of the State of Delaware having a principal place of business located at 320 W. Covina Blvd., San Dimas, California 91773.

**ANSWER**: Warn lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 and therefore denies them.

2. On information and belief, Warn is a corporation existing under the laws of the State of Delaware having a principal place of business at 12900 SE Capps Road, Clackamas, Oregon 97015 and a regular and established place of business at 4331 Eucalyptus Ave., Chino, California 91710.

**ANSWER**: Warn admits it is a Delaware corporation with a principal place of business at 12900 SE Capps Rd., Clackamas, Oregon 97015. Warn admits it at one time maintained a place of business at 4331 Eucalyptus Ave., Chino, California 91710. Warn denies the remaining allegations in paragraph 2.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims herein arise under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271.

**ANSWER**: Warn admits that the Complaint purports to arise under the patent laws of the United States. Warn admits that the Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) over a properly pleaded claim arising under federal patent law. Warn denies the remaining allegations in paragraph 3.

4. This Court has personal jurisdiction over Warn because it has a regular and established place of business in the State of California and in this District. This Court also has personal jurisdiction over Warn because it regularly transacts business and offers for sale and sells its Zeon XP Winch products, including the Zeon XP 10-S, Zeon XP 12-S, and Zeon XP 14-S (the "Accused Products") in the State of California and within this District. Warn offers for sale and sells the Accused Products by shipping, distributing, and advertising them on its website (warn.com), its Amazon.com seller website, and through a network of authorized dealers in California and in this District, to customers located in this District. The Court's exercise of jurisdiction over Warn is consistent with Warn's purposeful availment of this forum and will not offend traditional notions of fair play and substantial justice.

**ANSWER**: Warn admits that it at one time had a place of business in this District and that Warn offers for sale and sells the Accused Products in California and this District. Warn further admits that it offers for sale and sells the Accused

Products using warn.com, amazon.com, and through authorized dealers. Warn denies the remaining allegations in paragraph 4.

5. Venue is proper in this Court under 28 U.S.C. § 1400(b). Warn maintains a regular and established place of business in this District, namely at 4331 Eucalyptus Ave., Chino, California 91710. As detailed below, Warn has committed, and continues to commit, acts of infringement in this District through this facility and its regional commercial activities.

**ANSWER**: Warn denies the allegations in paragraph 5.

6. Warn further commits acts of infringement in this District through a robust physical distribution and retail network, including authorized retailers such as 4 Wheel Parts, which maintains numerous retail storefronts and service centers within this District.

**ANSWER**: Warn denies the allegations in paragraph 6.

7. On information and belief, Warn utilizes its Chino facility as a strategic base of operations for the marketing, promotion, and offering for sale of winch products. For example, Warn's Fabtech division, headquartered at the Chino facility, identifies this location as a base of operations while prominently featuring winches in its promotional materials and marketing imagery. On information and belief, through this physical presence, Warn facilitates targeted regional advertising and high-profile product demonstrations within this District, all designed to drive the sale of Accused Products.

**ANSWER**: Warn denies the allegations in paragraph 7.

## PATENT IN SUIT

8. Westin is the owner of all right, title, and interest in U.S. Patent No. 10,633,229 ("the '229 Patent"), titled Winch with Integrated Lighting, and Associated Systems and Methods. The '229 Patent was duly issued by the U.S. Patent and Trademark Office and is presumed valid. The '229 Patent is attached to this complaint as Exhibit 1.

**ANSWER**: Warn admits that a purported copy of U.S. Patent No. 10,633,229 ("the '229 Patent") is attached to the Complaint as Exhibit 1. The '229 Patent speaks for itself, and Warn denies any characterizations inconsistent therewith. Warn denies any remaining allegations in paragraph 8.

9. Westin has complied with the notice requirements of 35 U.S.C. § 287(a) by consistently marking its products that practice the ’019 Patent, including but not limited to the Superwinch SX Series Winches, with the ’229 Patent number. Alternatively, and/or in addition, Plaintiff provided actual notice of infringement to Defendant at least as early as July 29, 2025, via letter.

**ANSWER**: Warn admits that it received a letter from Westin concerning the ’229 Patent on July 29, 2025. Warn lacks knowledge or information sufficient to form a belief as to the truth of Westin’s allegations concerning its marking practices and therefore denies them. Warn denies the remaining allegations in paragraph 9.

## WARN’S ACCUSED ACTIVITIES AND [ALLEGED] INFRINGING CONDUCT IN THIS DISTRICT

10. The Accused Products satisfy every limitation of at least Claim 1 of the ’229 Patent, either literally or under the doctrine of equivalents. Specifically, the Accused Products comprise a frame, a cable drum, and a drive motor.

**ANSWER**: Warn denies the allegations in paragraph 10.

11. By way of example and not limitation, the Accused Products include an integrated lighting system comprising an electrical module (as that term is used in the ’229 Patent) carried by the frame. This module carries a drum light source, such as one or more light-emitting elements, positioned to illuminate at least a portion of the cable drum.

**ANSWER**: Warn denies the allegations in paragraph 11.

12. As configured, the Accused Products allow a user to monitor, in low-light conditions, the interaction between a cable or rope and the cable drum without requiring an external handheld light source.

**ANSWER**: Warn denies the allegations in paragraph 12.

13. Warn facilitates the use of the Accused Products in an infringing manner by providing manuals, installation guides, and other instructional materials (both in print and digital form) to its customers. These materials specifically instruct and encourage users to utilize the Accused Products in a manner that practices the claimed method of illuminating a winch as disclosed in the ’229 Patent.

**ANSWER**: Warn denies the allegations in paragraph 13.

14. Warn further conducts targeted regional advertising and high-profile product demonstrations within this District. Through these demonstrations and its instructional documentation, Warn teaches users to monitor drum interaction in low-light environments using the Accused Products' lighting.

**ANSWER**: Warn denies the allegations in paragraph 14.

15. Warn offers for sale and sells the Accused Products through its own website, its Amazon storefront, and authorized U.S. retailers such as 4 Wheel Parts, which distributes and sells the Accused Products at physical locations within this District. On information and belief, Warn's Chino-based infrastructure provides commercial and marketing support to facilitate these infringing sales to consumers in this District.

**ANSWER**: Warn admits that it offers for sale and sells the Accused Products using warn.com, amazon.com, and through authorized dealers. Warn denies the remaining allegations in paragraph 15.

16. On July 29, 2025, Westin provided written notice to Warn of the '229 Patent and Warn's infringement. Despite this notice and subsequent correspondence, Warn has continued to utilize its domestic facilities, its retail network, and its instructional materials to promote, use, offer for sale, and sell the Accused Products without authorization.

**ANSWER**: Warn admits that it received a letter from Westin concerning the '229 Patent on July 29, 2025. Warn denies the remaining allegations in paragraph 16.

## COUNT I

## [ALLEGED] DIRECT AND INDIRECT PATENT INFRINGEMENT OF THE '229 PATENT

17. Westin incorporates by reference all previous allegations as though set forth fully herein.

**ANSWER**: Warn incorporates its responses to paragraphs 1 through 16. To the extent a response to paragraph 17 is required, Warn denies that Westin is entitled to any relief.

18. Warn has infringed, and continues to infringe, one or more claims of the '229 Patent, including at least claim 1, under 35 U.S.C. § 271(a), literally and/or

under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing the Accused Products.

**ANSWER**: Warn denies the allegations in paragraph 18.

19. The Accused Products contain all the limitations of at least claim 1 of the ’229 Patent and therefore infringe claim 1. Claim 1 of the ’229 Patent recites:

> A winch with integrated lighting, comprising
> a frame
> a cable drum rotatably supported by the frame;
> a drive motor operatively connected to the cable drum; an electrical module carried by the frame; and
> a drum light source carried by the electrical module to illuminate at least a portion of the cable drum thereby allowing a user to see in a low light condition, interaction between a cable or a rope and the cable drum without requiring another light source to illuminate the at least a portion of the cable drum.

**ANSWER**: The ’229 Patent speaks for itself, and Warn denies any characterizations inconsistent therewith. Warn denies the remaining allegations in paragraph 19.

20. The Zeon XP 10-S comprises a frame.

**ANSWER**: Warn admits the allegations in paragraph 20.

21. The Zeon XP 10-S comprises a cable drum rotatably supported by the frame and a drive motor operatively connected to the cable drum.

**ANSWER**: Warn admits the allegations in paragraph 21.

22. The Zeon XP 10-S comprises an electrical module carried by the frame.

**ANSWER**: Warn denies the allegations in paragraph 22.

23. The Zeon XP 10-S comprises a drum light source carried by the electrical module to illuminate at least a portion of the cable drum.

**ANSWER**: Warn denies the allegations in paragraph 23.

24. The Zeon XP 10-S’s drum light source allows a user to see, in a low light condition, the interaction between a cable or a rope and the cable drum without requiring another light source to illuminate the at least a portion of the cable drum.

**ANSWER**: Warn denies the allegations in paragraph 24.

25. The operation and use of the Accused Products—whether by Warn or by its customers and end-users—practices each and every step of at least claim 21 of the ’229 Patent. Claim 21 of the ’229 Patent recites:

A method of illuminating a winch, the method comprising:

a. providing the winch comprising: a frame; a cable drum rotatably supported by the frame; a drive motor operatively connected to the cable drum; an electrical module carried by the frame; and one or more light sources carried by the electrical module to illuminate at least a portion of the cable drum;
b. positioning the one or more light sources on the winch; directing light emitted by the one or more light sources to illuminate at least a portion of a cable drum carried by the winch thereby allowing a user to see in a low light condition, interaction between a cable or a rope and the cable drum without requiring another light source to illuminate the at least a portion of the cable drum.

**ANSWER**: The ’229 Patent speaks for itself, and Warn denies any characterizations inconsistent therewith. Warn denies the remaining allegations in paragraph 25.

26. Accordingly, Warn has also infringed, and continues to infringe at least claim 21, under 35 U.S.C. § 271(a) and (b), literally and/or under the doctrine of equivalents, through: (1) its own direct acts of infringement; and/or (2) acts of joint infringement with its customers and end-users.

**ANSWER**: Warn denies the allegations in paragraph 26.

27. Warn has directly infringed and continues to directly infringe at least Claim 21 within the United States, including at its facility located in Clackamas, Oregon, by practicing the claimed method during the assembly, testing, quality control, and/or demonstration of the Accused Products.

**ANSWER**: Warn denies the allegations in paragraph 27.

28. Warn practices step (a) of claim 21 by providing a winch, such as the Zeon XP 10-S. On information and belief, Warn performs this step at its domestic facilities by making the winch available through, for example, internal hand-offs, for internal testing, quality control, or public demonstration. Warn ensures the necessary

winch components are provided in a state that enables the practice of the claimed method.

**ANSWER**: Warn denies the allegations in paragraph 28.

29. Warn further practices step (a) of claim 21 because the Zeon XP 10-S comprise a frame.

**ANSWER**: Warn admits the Zeon XP 10-S has a frame. Warn denies the remaining allegations in paragraph 29.

30. Warn further practices step (a) of claim 21 because the Zeon XP 10-S comprises a cable drum rotatably supported by the frame and a drive motor operatively connected to the cable drum.

**ANSWER**: Warn admits the Zeon XP 10-S has a cable drum rotatably supported by the frame and a drive motor operatively connected to the cable drum. Warn denies the remaining allegations in paragraph 30.

31. Warn further practices step (a) of claim 21 because the Zeon XP 10-S comprises an electrical module carried by the frame.

**ANSWER**: Warn denies the allegations in paragraph 31.

32. Warn practices step (b) of claim 21 by positioning the one or more light sources on the winch, such as the Zeon XP 10-S. Warn performs this step at its facilities in the United States through the incorporation of the one or more light sources into the electrical module during assembly such that the one or more light sources are carried by the electrical module.

**ANSWER**: Warn admits the Zeon XP 10-S has a light source. Warn denies the remaining allegations in paragraph 32.

33. Warn further practices step (b) of claim 21 by directing light emitted by the integrated drum light source to illuminate at least a portion of the cable drum. On information and belief, during Warn's testing, quality control, and/or demonstrations within the United States, Warn performs this step by activating the winch, such as the Zeon XP 10-S, which results in the emission of light that allows Warn's personnel to see the interaction between a cable or a rope and the cable drum in low-light conditions without requiring another light source.

**ANSWER**: Warn denies the allegations in paragraph 33.

34. Warn is also liable for joint infringement of Claim 21. Warn performs at least one step of the method and exercises direction or control over the performance of the method within the United States by Warn's customers and end-users.

**ANSWER**: Warn denies the allegations in paragraph 34.

35. Warn is jointly liable for infringement of step (a) of claim 21, i.e., providing a winch. Warn performs this step by shipping the assembled winch, such as the Zeon XP 10-S, to customers and end-users located in the United States or making available the assembled winch at brick-and-mortar retail stores to customers and end-users located in the United States. Warn ensures the necessary winch components are provided in a state that enables the practice of the claimed method.

**ANSWER**: Warn denies the allegations in paragraph 35.

36. Warn is further jointly liable for infringement of step (a) of claim 21 because the Zeon XP 10-S comprises a frame.

**ANSWER**: Warn admits the Zeon XP 10-S has a frame. Warn denies the remaining allegations in paragraph 36.

37. Warn is further jointly liable for infringement of step (a) of claim 21 because the Zeon XP 10-S comprises a cable drum rotatably supported by the frame and a drive motor operatively connected to the cable drum.

**ANSWER**: Warn admits the Zeon XP 10-S has a cable drum rotatably supported by the frame and a drive motor operatively connected to the cable drum. Warn denies the remaining allegations in paragraph 37.

38. Warn is further jointly liable for infringement of step (a) of claim 21 because the Zeon XP 10-S comprises an electrical module carried by the frame.

**ANSWER**: Warn denies the allegations in paragraph 38.

39. Warn is jointly liable for infringement of step (b) of claim 21, i.e., positioning the one or more light sources on the winch, such as the Zeon XP 10-S. Warn performs this step at its facilities in the United States, such as in Clackamas, Oregon, through the incorporation of the one or more light sources into the electrical module during assembly such that the one or more light sources are carried by the electrical module.

**ANSWER**: Warn admits the Zeon XP 10-S has a light source. Warn denies the remaining allegations in paragraph 39.

40. Warn is further jointly liable for infringement of step (b) of claim 21 by encouraging its customers and end-users in the United States to direct light emitted by the integrated drum light source to illuminate at least a portion of the cable drum. Warn encourages its U.S. customers and end-users through its instructions, manuals, marketing materials, and demonstrations to activate the winch, such as the Zeon XP 10-S, which results in the emission of light that allows a user to see the interaction between a cable or a rope and the cable drum in low-light conditions without requiring another light source.

**ANSWER**: Warn denies the allegations in paragraph 40.

41. The performance of the patented method within the United States is attributable to Warn because Warn directs or controls the performance of each step by the customer or end-user through its integrated product design and mandatory instructions, as described below.

**ANSWER**: Warn denies the allegations in paragraph 41.

42. Warn directs or controls the performance of the claimed method by conditioning access to its proprietary operational ecosystem—specifically the ability to safely operate the winch and receive real-time "Dynamic Lighting" feedback—upon the user's performance of specific activation steps within the United States. This conditioned benefit includes access to live updates on winch status, such as motor temperature and load levels, along with the task lighting necessary to monitor the interaction between the rope and the drum in low-light conditions. Warn establishes the manner and timing of this performance within the United States through exhaustive, step-by-step instructions that mandate a specific sequence of events, dictating the timing for wireless operation by requiring the user to download the proprietary "WARN® HUB App" from U.S.-based application stores, open the interface, and hold the pairing button on the HUB Receiver for exactly "approximately 3 seconds" until a blue light flashes. Furthermore, Warn establishes the manner of performance for corded operation by providing a proprietary "Remote Socket" (or D-plug port) which requires the user to plug in the corded remote in a specific orientation to enable winch activation. Because the "directing light" limitation is technologically tethered to these proprietary Warn interfaces, the user's performance is not independent; rather, it is strictly dictated by Warn's technical parameters and temporal protocols, rendering Warn the mastermind of the infringing method carried out within the United States.

**ANSWER**: Warn denies the allegations in paragraph 42.

43. On information and belief, the Zeon XP 12-S and Zeon XP 14-S are substantially similar to the Zeon XP 10-S in all respects relevant to the '229 Patent. Specifically, the Zeon XP 10-S, 12-S, and 14-S share a common modular architecture wherein they incorporate the same frame, cable drum, drive motor, electrical module, and drum light source. Consequently, the Zeon XP 12-S and 14-S utilize the same integrated lighting system and operate in the same manner as the Zeon XP 10-S to illuminate the cable drum for the user in low-light conditions. Furthermore, on information and belief, Warn provides substantially identical marketing materials, user manuals, and technical instructions for the 10-S, 12-S, and 14-S models. These uniform materials direct and encourage users to operate each of the models in the same manner—specifically using the integrated drum light source to illuminate the cable drum in low-light conditions—thereby practicing the methods claimed in the '229 Patent.

**ANSWER**: Warn admits that the Zeon XP 12-S and Zeon XP 14-S share the same foundation and lighting features as the Zeon XP 10-S. Warn further admits that the Zeon XP 12-S and Zeon XP 14-S utilize the same integrated lighting system and operate in the same manner as the Zeon XP 10-S to illuminate the cable drum for the user in low-light conditions. Warn further admits that marketing materials, user manuals, and technical instructions for the Zeon XP 10-S, 12-S, and 14-S models similarly instruct users how to operate the integrated light source to illuminate the drum. Warn denies the remaining allegations in paragraph 43.

44. Warn's infringing acts are without license or authorization from Westin.

**ANSWER**: Warn admits that it does not have a license to the '229 Patent. Warn otherwise denies the allegations in paragraph 44.

45. Warn has had notice of its infringement of the '229 Patent no later than its receipt of Westin's July 29, 2025 letter.

**ANSWER**: Warn admits that it received Westin's July 29, 2025, letter. Warn otherwise denies the allegations in paragraph 45.

46. In the alternative, by no later than the time of the filing and/or service of this Complaint, Warn knew, or should have known, that its actions constitute infringement of the '229 Patent. Warn has nonetheless continued in its infringement.

**ANSWER**: Warn denies the allegations in paragraph 46.

47. Warn is also liable for joint infringement of the '229 Patent because it has directed or controlled the performance of the infringing method steps by its customers and end-users, despite having actual notice of the '229 Patent since at least July 29, 2025.

**ANSWER**: Warn denies the allegations in paragraph 47.

48. Warn's acts of infringement of the '229 Patent recited herein have been committed, and are being committed, with knowledge of Westin's rights in the '229 Patent. Prior to the filing of this action, Warn knew, should have known, or was willfully blind to the fact, that its actions constituted infringement of the '229 Patent, given Warn's knowledge of the '229 Patent and Westin's July 29, 2025 letter. On information and belief, Warn has acted, and is continuing to act, despite an objectively high likelihood that its actions constituted direct infringement of a valid patent, and knew, or should have known, of that objectively high risk since at least the filing of this Complaint and/or the date that this Complaint was served upon it. Pursuant to 35 U.S.C. § 284, Westin is entitled to damages for Warn's infringing acts. Warn's acts further constitute willful and deliberate infringement, entitling Westin to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs under 35 U.S.C. § 285.

**ANSWER**: Warn denies the allegations in paragraph 48.

49. As a direct and proximate result of Warn's infringement of the '229 Patent, Westin has suffered irreparable injury for which it has no adequate remedy at law. Unless Warn is permanently enjoined from further infringement of the '229 Patent, Westin will continue to suffer irreparable injury and impairment of the value of its patent rights.

**ANSWER**: Warn denies the allegations in paragraph 49.

## [PLAINTIFF'S] PRAYER FOR RELIEF

50. Warn denies that Westin is entitled to any relief as alleged or otherwise and denies all the allegations contained in Paragraphs (A)–(H) of Plaintiff's Prayer for Relief. All other allegations in the Complaint not specifically admitted or denied are hereby denied.

## AFFIRMATIVE DEFENSES

51. Warn incorporates by reference the denials and admissions set forth above and asserts the following affirmative defenses. Warn does not assume the burden of proof with respect to those matters as to which Westin bears the burden.

This statement of defenses is based on Warn's investigation to date, and Warn reserves the right to supplement, amend, or withdraw its defenses as new information is learned.

**FIRST DEFENSE: NON-INFRINGEMENT**

52. Warn has not infringed, and currently does not infringe, under any theory of infringement, including either literally or under the doctrine of equivalents, any valid, enforceable claim of the '229 Patent. By way of example and without limitation, independent Claims 1 and 21, identified by Westin in its Complaint, require "a drum light source carried by the electrical module to illuminate at least a portion of the cable drum." Warn's ZEON XP winch does not include a drum light source carried by the electrical module. Rather, the ZEON XP's drum light source is structurally connected to and carried by the tie plate structure of the winch frame, which is independent of the electrical module.

**SECOND DEFENSE: INVALIDITY**

53. The claims of the '229 Patent are each invalid for failure to comply with one or more of the requirements for patentability under United States Code, Title 35, including without limitation 35 U.S.C. §§ 102, 103, 112 and the rules, regulations, and laws pertaining thereto.

54. By way of example and without limitation, the asserted claims of the '229 Patent are anticipated and rendered obvious by, *inter alia*, U.S. Pat. No. 10,767,821 (the "'821 Patent") titled "Fairlead with a Lighting System," which claims priority to Provisional App. No. 62/331,558 (the "'558 App.").

55. The '821 Patent discloses the use of lighting on a fairlead in winching applications: "Fairleads may be used in winches, hoists, boats, and other applications where a rope and/or cable is subjected to bi-directional motion. In some applications, such as in winching operations, it may be desirable to attach lights to the fairlead to increase visibility. The lights may be attached to a frame of the fairlead, and may provide increased illumination in front of the fairlead." '821 Patent at 1:24–31. It

further describes drawbacks of attaching aftermarket lights to fairleads and discloses "a fairlead comprising: a frame including a central, first opening and a second opening spaced away from the first opening; and a lighting system included within the frame, the lighting system comprising a plurality of lights disposed within and extending along the second opening." *Id.* at 1:23–47.

56. Black & Decker's U.S. Patent No. 8,006,958 (the "'958 Patent") likewise discloses a portable winch assembly with a light that illuminates the spool area to permit observation of spool rotation and cable winding.

57. The '821 Patent anticipates the claims of the '229 Patent or renders them obvious, alone or in combination with U.S. Pat. No. 9,315,364 to Averill, cited by the Patent Office during prosecution of the '229 Patent, or other winch-system prior art, including the '958 Patent.

58. Accordingly, the subject matter claimed in the '229 Patent was previously disclosed and/or would have been obvious to a person of ordinary skill in the art, and the claims of the '229 Patent are invalid under at least 35 U.S.C. §§ 102 and/or 103, as well as one or more other provisions of Title 35.

## THIRD DEFENSE: NO INDIRECT OR JOINT INFRINGEMENT

59. Warn is not liable for induced, contributory, or joint infringement. Westin cannot establish the requisite predicate direct infringement, knowledge or intent for indirect infringement, or a legally sufficient basis to attribute any independent customer's or end user's acts to Warn.

## FOURTH DEFENSE: NO WILLFUL INFRINGEMENT

60. Warn has not willfully or deliberately infringed any valid, enforceable claim of the '229 Patent, and Westin is not entitled to enhanced damages on that basis. Warn's receipt of Westin's letter does not constitute an admission of infringement or willfulness.

## FIFTH DEFENSE: GOOD FAITH

61. Warn has engaged in all relevant activities in good faith, thereby

precluding Westin, even if it prevails, from recovering its reasonable attorneys' fees or costs under 35 U.S.C. § 285.

**SIXTH DEFENSE: DEDICATION TO THE PUBLIC**

62. The relief sought by Westin is barred, in whole or in part, because Westin dedicated to the public all methods, systems, and products disclosed in the '229 Patent but not literally claimed therein.

**SEVENTH DEFENSE: LIMITATIONS ON DAMAGES AND COSTS**

63. Westin's claim for damages is barred, in whole or in part, by at least 35 U.S.C. § 286. For the purposes of this defense, the relevant calculation period for damages—as prescribed by statute—cannot be more than six years prior to filing the Complaint. Further, Westin's claims for damages for alleged infringement of the '229 Patent are limited under 35 U.S.C. § 287 because Westin has failed to adequately mark its patented products. As a result, Westin is not entitled to damages for any alleged infringement that occurred before Westin gave actual notice of alleged infringement to Warn. To the extent any claim of the '229 Patent is invalid, Westin is barred from recovering costs by 35 U.S.C. § 288.

**EIGHTH DEFENSE: NO EXCEPTIONAL CASE FOR PLAINTIFF**

64. Warn has not engaged in any conduct that would make this an exceptional case that would entitle Westin to an award of attorneys' fees or enhanced damages.

**NINTH DEFENSE: EQUITABLE DOCTRINES**

65. Westin's attempted enforcement of the '229 Patent is barred by one or more of the equitable doctrines of estoppel, acquiescence, waiver, unclean hands and/or other equitable doctrines.

**TENTH DEFENSE: INJUNCTIVE RELIEF**

66. Westin is not entitled to any injunctive relief because, among other reasons, any alleged injury is not immediate or irreparable, and Plaintiff has an adequate remedy at law for any alleged injury.

## OTHER DEFENSES RESERVED

67. Warn reserves the right to assert any additional defenses, at law or equity, that may be available now or in the future based on discovery or any factual investigation in this case.

## WARN'S COUNTERCLAIMS

1. Warn Industries, Inc. ("Warn") hereby asserts the following counterclaims against Westin Automotive Products, Inc. ("Westin").

## THE PARTIES

2. Warn is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 12900 SE Capps Road, Clackamas, Oregon 97015.

3. As alleged by Westin in paragraph 1 of Westin's Complaint, Westin is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 320 W. Covina Blvd., San Dimas, California 91773.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202 because the counterclaims herein arise under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271.

5. Westin submitted to this Court's personal jurisdiction by bringing its Complaint here. Warn does not, by asserting these counterclaims, waive any timely and otherwise preserved objection to Westin's choice of venue for its own claims.

6. Based solely on Westin's filing of this action, venue is proper pursuant to at least 28 U.S.C. §§ 1391 and 1400.

7. This Court also has personal jurisdiction over Westin in this action because Westin resides in this District and has committed acts of infringement within the State of California and within this District.

8. On information and belief, Westin engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided in

this District and in California, has purposefully established substantial, systematic, and continuous contacts within this District, and should reasonably expect to be sued in a court in this District.

9. The Court's exercise of jurisdiction over Westin will not offend traditional notions of fair play and substantial justice.

**THE '482 PATENT**

10. On May 11, 2021, U.S. Patent No. 11,001,482 (the "'482 Patent"), entitled "Winch including a motor mounted contactor," was duly and legally issued by the United States Patent and Trademark Office. Warn is the assignee of record of the '482 Patent at the United States Patent and Trademark Office. A true and accurate copy of the '482 Patent is attached hereto as Exhibit A.

11. The '482 Patent is presumed valid, including under Sections 101, 102, 103, and 112 of 35 U.S.C. § 101 et seq.

12. Claim 1 of the '482 Patent is directed to a motor assembly for a winch and recites a motor; a contactor assembly coupled around and in face-sharing contact with a portion of the motor's outer surface and including two or more spaced-apart coils; a drum support coupled to inner ends of the motor and contactor assembly, with both assemblies within bounds defined by the support's outer walls; and a motor end cap coupled to an outer end wall of the contactor assembly, with that wall opposite the inner wall and within those bounds.

13. The written description of the '482 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

14. Warn virtually marks its products with its patents at https://www.warn.com/registered-patents.

**COUNTERCLAIM COUNT I:**

**INFRINGEMENT OF THE '482 PATENT**

15. Warn incorporates by reference and re-alleges each and every allegation of paragraphs 1 through 14 of its Counterclaims as if set forth herein.

16. Warn owns all substantial rights, interest, and title in and to the '482 Patent, including the sole and exclusive right to prosecute this action and enforce the '482 Patent against infringers, and to collect damages for all relevant times.

17. Westin, directly or through its Superwinch business, has offered for sale and sold infringing winches, including the Westin Scorpion ("Scorpion"), (the "Accused Westin Products") in the United States during the term of the '482 Patent. Westin has directly infringed and continues to directly infringe at least claim 1 of the '482 Patent by making, having made, using, importing, supplying, distributing, selling, and/or offering for sale the Accused Westin Products.



18. For example, the Accused Westin Products, including the Scorpion, include a motor assembly for a winch with a motor. The Scorpion's packaging identifies a 1.9 HP motor. On information and belief, the motor is located at one end of the drum.




19. The Accused Westin Products' contactor assembly is positioned adjacent to the motor and is coupled around and in face-sharing contact with a portion of the motor's outer surface.

20. The Accused Westin Products' contactor assembly includes two or more coils spaced apart from one another within the assembly.



21. The Accused Westin Products include a drum support at the motor end of the drum, coupled to an inner end of the motor and an inner end of the contactor assembly.



22. The Accused Westin Products' motor and contactor assemblies are contained within the bounds defined by the outer walls of the drum support.

23. The Accused Westin Products have a motor end cap coupled to an outer end wall of the contactor assembly; that wall is opposite an inner end wall of the contactor assembly and is contained within the bounds defined by the outer walls of the drum support.



24. Warn provided Westin's counsel of record with notice of these infringement allegations on September 22, 2026.

25. Since at least the time of receiving that notice, or these Counterclaims, Westin has also indirectly infringed and continues to indirectly infringe the '482 Patent by inducing others to directly infringe its claims. Westin has induced and continues to induce customers and end-users, including, but not limited to, Westin's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '482 Patent by providing use of the Accused Westin Products. Westin took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Westin Products in a manner that infringes one or more claims of the '482 Patent, including, for example, claim 1. Such steps by Westin included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Westin Products in an infringing manner; advertising and promoting the use of the Accused Westin Products in an infringing manner; or distributing instructions that guide users to use the Accused Westin Products in an infringing manner. Westin is performing these steps, which constitute induced infringement, with the knowledge of the '482 Patent and with the knowledge that the acts constitute infringement. Westin is aware that the normal and customary use of the Accused Westin Products would infringe the '482 Patent.

26. Westin has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '482 Patent. Westin has contributed and continues to contribute to the direct infringement of the '482 Patent by its customers, personnel, and contractors. The Accused Westin Products have special features that are specifically designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '482 Patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '482 Patent and are not staple articles of commerce

suitable for substantial non-infringing use. Westin's contributory infringement is ongoing.

27. Westin's infringement of the '482 Patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Warn's rights under the '482 Patent.

28. Warn has suffered damages as a result of the infringing conduct by Westin alleged above. Thus, Westin is liable to Warn in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

29. Warn has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Warn has and will continue to suffer this harm by virtue of Westin's infringement of the '482 Patent. The balance of hardships favors Warn's ability to commercialize its own ideas and technology. The public interest in allowing Warn to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

30. Warn has complied with 35 U.S.C. § 287 with respect to the '482 Patent at least by virtually marking its patented products on its website.

## COUNTERCLAIM COUNT II:
## DECLARATION OF NON-INFRINGEMENT OF THE '229 PATENT

31. Warn incorporates by reference and re-alleges each and every allegation of paragraphs 1 through 30 of its Counterclaims as if set forth herein.

32. Based on Westin's filing of this action and at least Warn's First Defense, which is incorporated by reference herein, an actual controversy has arisen and now exists between the parties as to whether Warn infringes the '229 Patent.

33. Warn does not infringe and has not infringed any valid and enforceable claim of the '229 Patent, directly, contributorily, or by inducement pursuant to 35 U.S.C. § 271.

34. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et

seq., Warn requests a declaration by the Court that Warn has not infringed and does not infringe any claim of the ’229 Patent under any theory (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)).

35. Warn advised Westin in a letter dated March 9, 2026, of its non-infringement position and the grounds for that position. Westin nevertheless pursued its infringement allegations without adequately addressing the issues Warn identified. Warn alleges that, in light of the totality of the circumstances, this case is exceptional and, if Warn is the prevailing party, requests its reasonable attorneys’ fees under 35 U.S.C. § 285.

## COUNTERCLAIM COUNT III:
## DECLARATION OF INVALIDITY OF THE ’229 PATENT

36. Warn incorporates by reference and re-alleges each and every allegation of paragraphs 1 through 35 of its Counterclaims as if set forth herein.

37. Based on Westin’s filing of this action and at least Warn’s Second Defense, which is incorporated by reference herein, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the ’229 Patent.

38. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Warn requests a declaration by the Court that claims of the ’229 Patent are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

39. In a letter dated March 9, 2026, Warn advised Westin of its position that the asserted claims of the ’229 Patent are invalid in view of identified prior art, including the ’558 App. and ’821 Patent. Westin nevertheless asserted those claims without adequately addressing the invalidity grounds Warn identified. Warn requests that, if it prevails, the Court consider Westin’s conduct and the substantive strength of its position under the totality of the circumstances, determine that this is an

exceptional case, and award Warn its reasonable attorneys' fees under 35 U.S.C. § 285.

## RELIEF REQUESTED

40. WHEREFORE, Warn requests that the Court enter a judgment in its favor granting the following relief:

a. Dismissing Westin's Complaint with prejudice;

b. Denying all relief requested by Westin;

c. Declaring that Warn has not infringed the '229 Patent;

d. Declaring that the '229 Patent is invalid;

e. Judgment that one or more claims of the '482 Patent have been infringed, either literally or under the doctrine of equivalents, by Westin directly or others acting in concert therewith indirectly;

f. A permanent injunction enjoining Westin and its officers, directors, agents, servants, affiliates, employees, divisions and all persons in active concert or participation with them from further infringement of the '482 Patent;

g. Damages pursuant to 35 U.S.C. § 284 adequate to compensate Warn for Westin's infringement of the '482 Patent, including both pre- and post-judgment interest and costs and enhanced damages;

h. Declaring that this is an exceptional case, and awarding Warn its reasonable attorneys' fees, costs, and expenses pursuant to 35 U.S.C. § 285; and

i. Such other and further relief as this Court deems just and proper under the circumstances.

## JURY DEMAND

41. Warn demands trial by jury on all issues so triable.

Dated: October 29, 2026

K&L GATES LLP

By: /s/ *Erik J. Halverson*

Erik J. Halverson (SBN 333492)
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001
erik.halverson@klgates.com

*Attorney for Defendant Warn Industries, Inc.*